```
               IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF OREGON

                           Portland Division


EVELYN J. SALAZAR,                              CV 09-944-MA

         Plaintiff,                             OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

         Defendant.
```

```
SARA L. GABIN
4500 S.W. Kruse Way, Suite 100
Lake Oswego, OR 97035
(503) 620-3171

         Attorney for Plaintiff

DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003
```

1  - OPINION AND ORDER

FRANCO L. BECIA
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2114

    Attorneys for Defendant

MARSH, Judge.

   Plaintiff Evelyn J. Salazar seeks judicial review of the Commissioner's final decision denying her March 2, 2005, application for supplement security income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.

   Plaintiff was 34 years old on the date of the final decision of the Commissioner.  She seeks SSI beginning on May 14, 2003, because of affective/mood disorders and anxiety disorders.  The Administrative Law Judge (ALJ) held hearings on March 20, 2007, and July 19, 2007.  On August 20, 2007, the ALJ issued a decision that plaintiff was not disabled.  Plaintiff timely appealed the ALJ's decision to the Appeals Council.  On June 19, 2009,  the Appeals Council denied plaintiff's request for review.  The ALJ's decision, therefore, became the Commissioner's final decision for purposes of review.

   Plaintiff contends the ALJ erred in evaluating plaintiff's credibility, the medical evidence, the lay witness evidence, and the vocational expert's testimony as to plaintiff's residual functional capacity.

2  - OPINION AND ORDER

Accordingly, plaintiff seeks an order from this court reversing the final decision and remanding the case for an award of benefits.

For the following reasons, I **affirm** the Commissioner's decision.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. Bowen v. Yuckert, 482 U.S.137, 140 (1987). See also 20 C.F.R. § 404.1520. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since March 2, 2005.

At Step Two, the ALJ found plaintiff's history of depressive disorder with psychotic features and anxiety disorder are severe impairments. See  20 C.F.R. §404.1520(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found these impairments do not meet or equal a listed impairment.

The ALJ found plaintiff has the residual functional capacity to work without physical limitations, but has psychological

limitations that restrict her to jobs involving simple and some detailed tasks involving occasional contact with the public and occasional brief interactions with co-workers.

At Step Four, the ALJ found plaintiff is unable to perform any of her past relevant work as a security alarm monitor, telephone solicitor, customer service representative, fast-food worker, retail order clerk, and/or debt collector.

At Step Five, the ALJ found plaintiff is able to perform the jobs of electrical worker and small products assembler, which exist in substantial numbers in the national economy.

Accordingly, the ALJ found plaintiff is not disabled and denied plaintiff's SSI claim.

## ISSUES ON REVIEW

Plaintiff asserts the ALJ erred by failing to (1) give clear and convincing reasons that were supported by substantial evidence in the record for not crediting her testimony regarding the severity of her impairments; (2) credit Licensed Clinical Social Worker Janet Ehrenfreund's medical opinion that plaintiff is unable to work because of her continuing mood disorders; (3) adequately address the lay witness evidence submitted by plaintiff's boyfriend; and (4) adequately evaluate plaintiff's residual functional capacity.

## **LEGAL STANDARDS**

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039  (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000).

"If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## RELEVANT RECORD

1. **Plaintiff's Evidence**.

Plaintiff's evidence includes her testimony at the two evidentiary hearings, her disability reports, and her responses to questionnaires submitted in support of her claim.

On the date of the evidentiary hearings, plaintiff was 37 years old. She is a Guatemalan national who came to the United States at the age of four. She lives with her boyfriend and her four children, whose ages ranged from 8-15 at the time of the hearings.

Education/Work History.

Plaintiff has a high school diploma although she has difficulty reading and recalling what she has read.  She does not have any post-high school education or training.

From June 1991 until April 1993, when she quit to give birth and raise her first child, plaintiff took telephone orders from customers wishing to rent party equipment.  That job involved lifting up to 20 lbs.

From August 1998 to December 1999, plaintiff worked as a cashier/front counter attendant in a fast food restaurant.

During 1999, plaintiff also worked for several months as a telemarketer.

From December 1999 until August 2000, plaintiff worked in a bank customer service call center but was terminated for taking too long on the telephone responding to customers' issues.

Plaintiff last worked from September 2000 until June 2001 as an alarm operator in a call center responding to alarm signals.  She was laid off when the call center closed.

Plaintiff has also worked as a secretary in a real estate office and as a cashier in a music video store.

Plaintiff has not applied for any jobs since the alleged onset of her disability in May 2003.  She has not looked for and has been unable to work since then because she is unable to deal with people.

Health History.

In May 2003, plaintiff suffered a mental health breakdown and was hospitalized.  She received mental health treatment from psychologist Thomas Stokes, Psy.D. in the months immediately following her discharge from hospital.  Thereafter, beginning in about March 2004, she received the bulk of her mental health care from Homestreet-Banyan Tree, a facility that provides mental health treatment.

In May 2004, plaintiff stopped taking prescribed Zoloft antidepressant medication because it caused her to gain weight. Her medication was then changed to Cymbalta, which gave her nightmares.

In 2006, plaintiff began hearing voices.  She is now prescribed Respiradol, Effexor, Xanax, and Wellbutrin.

In early 2007, plaintiff attended support group meetings three times a week.  A short time later, however, she stopped going when her benefits were cut and she had no transportation.

Plaintiff has used marijuana very occasionally in the past but not since 2005.

Daily Activities.

Plaintiff is able to dress and groom herself. She cooks and does the laundry and housework.  She is nervous when she cooks but her children help her out.  She grocery shops two-three times a week but is almost always accompanied by someone when doing so.

During the summer plaintiff takes her children to a swimming pool. She occasionally walks them two blocks from home to their school but she does not like walking home alone. She attends her children's school conferences and accompanies them on school field trips such as to the zoo or the arboretum. She does not like to do so, however, for fear that other people will approach and talk to her. She has gone on one bicycle ride with her daughter. She generally exercises by doing arm/leg work in a swimming pool.

Plaintiff's hobbies include crocheting and knitting. She reads very little. She has gone to the movies once or twice in four years. Occasionally she has accompanied her boyfriend when he had a home remodeling job. She would hand him tools. She also cleaned the paint brushes when he painted her house.

Plaintiff feels "down" almost on a daily basis, to the extent that she goes to her room to be left alone. She sleeps a lot during the day when her children are at school. She also sleeps 6-7 hours a night.

Plaintiff has difficulty speaking to people either in person or on the telephone.

Plaintiff takes her children to their medical appointments and school conferences. Her father drives her to her doctor's or counseling appointments.

9   - OPINION AND ORDER

**2.   Lay Witness Evidence**.

Plaintiff's boyfriend reports he has lived with plaintiff and her children since 2003.  Plaintiff does routine household chores and cares for her children's needs.  Plaintiff has no difficulty with personal care matters but sometimes forgets to take her medication or go to previously scheduled appointments.  She cooks well-balanced meals for the family.  She spends a few hours daily cleaning house, cooking, and doing the laundry, but she needs encouragement when there is a lot of housework to do.

Plaintiff's hobbies include knitting, bead work, watching television, and participating in various activities with her children.

Plaintiff's social activities include talking to her parents and on the telephone even though she has a difficult relationship with them.  She occasionally visits with friends.  Her social activities have not changed significantly since the onset of her alleged disability.

Plaintiff's attention span varies based on the complexity of the subject matter she is dealing with and her emotional state at the time.  She is able to follow simple instructions well and complicated matters "not so well."  She is polite and almost subservient to authority figures.

Plaintiff does not handle stress well and blocks out matters causing her stress or "internalizes" to the point of depression.

10 - OPINION AND ORDER

3.   **Medical Records**.

   a.   **Psychiatric/Psychological Treatment Evidence.**

   Oregon Health Sciences University (OHSU).

   In May 2003, plaintiff was admitted to OHSU suffering from psychosis. She acknowledged using marijuana the day she was admitted. On admission, plaintiff was confused, misperceiving events as they were occurring, and her insight and judgment were "very impaired." She was discharged 14 days later with a final diagnosis of Psychosis (NOS) with a GAF score of 45 (serious impairment in occupational functioning).

   Psychiatric resident Jayne Payne, Psy.D, diagnosed plaintiff as having a Schizophreniform Disorder and opined she would be unable to work for up to one year.

   Thomas Stokes, Psy.D. - Psychologist.
   Michael Duran, M.D. - Psychiatrist.

   Dr. Stokes treated plaintiff in June 2003 one month after her discharge from OHSU. He diagnosed Schizophreniform Disorder with a GAF score of 60 (moderate difficulty in occupational functioning).

   Dr. Duran also treated plaintiff in the same time frame. He diagnosed Bipolar Affective Disorder, Type I and Schizo-phreniform disorder with a GAF score of 55 - moderate difficulty in occupational functioning. He recommended ongoing psychiatric care to develop a more accurate diagnosis.

11 - OPINION AND ORDER

<u>Homestreet Banyon Tree, Inc. - Mental Health Services</u>.

From July 2003 through December 2006, plaintiff received mental health counseling and group therapy treatment for psychiatric impairments from several treatment providers at Homestreet, including Licensed Clinical Social Worker Janet Ehrenfreund, LCSW, Mental Health Specialist Sheri Dinguss, MA, Psychiatric Nurse Practitioners Marianne Kandel, PMHNP, and Lori Danker, PMHNP, and Mental Health Associate Dianne Himel, QMHA.

Based on the intake interview in June 2003, Dinguss assigned plaintiff a GAF score of 70 - mild symptoms resulting in some difficulty in occupational functioning.  In the course of the next year, Danker assigned GAF scores ranging from 66-68, also reflecting mild difficulties in occupational functioning.

Over the course of plaintiff's therapy, her functioning level was generally noted to be stable although some level of psychological impairment was occasionally noted.

In May 2007, Ehrenfreund reported to plaintiff's attorney in response to specific questions from the attorney that plaintiff suffers from Generalized Anxiety Disorder and Major Depressive Disorder and might expect ongoing mood disorder symptoms.  She assigned a GAF score of 50, reflecting a serious impairment in occupational functioning.  Ehrenfreund noted that she disagreed with the higher GAF scores assigned to plaintiff by other Homestreet treatment providers.

12 - OPINION AND ORDER

   **a.   Psychological Treatment Evidence.**

   <u>Frank G. Lahman, Ph.D - Psychologist</u>.
   <u>Bill Hennings, Ph.D. - Psychologist</u>.

   Dr. Lahman opined and Dr. Hennings concurred that plaintiff has an anxiety disorder causing mild restrictions in daily living activities and moderate difficulties in social functioning and concentration, persistence, and pace, with one or two episodes of decompensation.  As such, plaintiff has moderate difficulties carrying out detailed instructions and working with others without distraction  She is also moderately limited in her ability to interact appropriately with the general public, set realistic goals or make plans independent of others.  She is able to understand, remember, and carry out simple, routine tasks.

## DISCUSSION

**<u>Rejection of Plaintiff's Testimony</u>**.

   A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'"  <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  <u>See</u> <u>also</u> <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The claimant need not produce objective medical evidence of the symptoms or their severity.  <u>Smolen v. Chater</u>, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

13 - OPINION AND ORDER

If the claimant produces objective evidence that underlying impairments could cause the pain complained of and there is no affirmative evidence to suggest the claimant is malingering, the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of his symptoms.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  See also Smolen, 80 F.3d at 1283.  To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  Id. at 1284 (citations omitted).

   Here there is no evidence of malingering.  Nevertheless, the ALJ found plaintiff's statements regarding the extent and severity of her psychological impairments were inconsistent with her level of daily activity, which includes grocery shopping, housekeeping, participation in her children's daily recreational and school activities, and pursuit of her hobbies, including crocheting and knitting.  The ALJ also concluded that plaintiff's psychological functioning limitations were adequately reflected in the hypothetical questions the ALJ asked the vocational expert

14 - OPINION AND ORDER

to consider in determining the types of jobs plaintiff could perform.

Finally, the ALJ relied on the GAF scores assigned to plaintiff by psychologist Thomas Stokes, Psy.D. and other mental health practitioners who counseled plaintiff on a more regular basis, that indicated plaintiff, for the most part, had mostly mild, and to a lesser extent, moderate difficulties in occupational functioning.  The only practitioner who contradicted that assessment was Janet Ehrenfreund, LCSW, who acknowledged that her opinion was contrary to that of others, including her co-worker, Nurse Practitioner Lori Danker,

On this record, I conclude the ALJ gave clear and convincing reasons for not fully crediting plaintiff's testimony regarding her ability to engage in substantial gainful activity in light of her psychological impairments.

**Rejection of Nurse Practitioner Janet Ehrenfreund's Assessment**.

Plaintiff contends the ALJ erred in not giving "controlling weight" to the disability opinion of treating Nurse Practitioner Ehrenfreund, over the opinions of non-treating medical sources.

As noted, Nurse Ehrenfreund assigned a GAF score of 50 (serious symptoms causing some difficulty in occupational functioning), which was far lower, and reflected a significantly more severe psychological impairment, than the GAF scores assigned by any of the other mental health practitioners who also

15 - OPINION AND ORDER

treated plaintiff for the same impairments at Homestreet. Their scores ranged from 66-70 (mild symptoms causing some difficulty in occupational functioning.

The ALJ noted the inconsistency in that evidence and also noted Nurse Ehrenfreund's later opinion as to the level of plaintiff's functioning was contrary to her opinion when she was actually treating plaintiff.

On this record, I conclude the ALJ gave clear and convincing reasons for not crediting Nurse Ehrenfreund's opinion regarding the severity of plaintiff's psychological impairments and the impact of those impairments on plaintiff's ability to engage in substantial gainful activity.

**3.   Failure to Address Lay Witness Evidence.**

Plaintiff contends the ALJ failed to adequately explain why she did not fully credit the lay witness evidence of her boyfriend, Carl Mangine.

Lay witness evidence as to a claimant's symptoms "is competent evidence that an ALJ must take into account" unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001).

Contrary to plaintiff's contention, the ALJ addressed the lay evidence of plaintiff's companion but drew different conclusions regarding the import of that evidence than did

plaintiff.  I find the ALJ's conclusions regarding that evidence were warranted and reasonable based on the record as a whole.

### 4. Evaluation of Plaintiff's Residual Functional Capacity.

Plaintiff contends the ALJ erred by not accepting the opinion of the vocational expert that plaintiff would not be able to engage in substantial gainful activity based on the psychological limitations <u>as described by plaintiff's counsel</u>. The psychological impairments described by counsel, however, are more severe than those found by the ALJ and are not supported by the medical evidence in the record.

On the other hand, the ALJ's description of plaintiff's psychological impairments to the vocational expert reasonably reflected the medical evidence as a whole.

On this record, I conclude the ALJ did not err in her evaluation of plaintiff's residual functional capacity.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is **affirmed** and this action is **dismissed** with prejudice.

IT IS SO ORDERED.

DATED this 17 day of November, 2010.

/s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge

17 - OPINION AND ORDER

18 - OPINION AND ORDER